UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JACK FLOYD, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>WESTERN OILFIELDS SUPPLY COMPANY, a Delaware corporation, d/b/a Rain for Rent, d/b/a Lake Company, d/b/a WOSCO Foundry; JOHN DOES I-X, whose true name is unknown,<br><br>Defendants. | Case No. 2:19-cv-00464-DWM<br><br>ORDER |

Defendant Western Oilfields Supply Company ("Western Oilfields") seeks to dismiss this personal injury product liability case for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. 3.) Also pending are Western Oilfields' motion to strike, (Doc. 16), and Plaintiff Jack Floyd's motion to stay or alternatively transfer the case, (Doc. 11). All three motions are denied.

**BACKGROUND**

**I.    The Incident**

On October 10, 2017, Floyd, an employee of CASS, Inc., was disbanding a bale of aluminum pipe at a CASS industrial recycling facility in Kootenai County, Idaho when the bale burst without warning, causing him serious injury. (Compl., Doc. 1-4 at ¶ 4.) Western Oilfields sells, distributes, markets, packages, and labels scrap material in the

1

form of bales to CASS for industrial recycling. (*Id.* at ¶ 2.) After CASS receives bales of scrap material from Western Oilfields it converts them into raw material for sale to other businesses at its facility in Kootenai County. (*Id.* at ¶ 3.) Floyd alleges that Western Oilfields knew, or ought to have known, that there was a serious risk of the bale bursting from the moment it was banded and placed under pressure. (*Id.* at ¶ 19.)

## II. Western Oilfields' Operations

Relevant to the present motions, the parties dispute the connection between Western Oilfields and Idaho. Western Oilfields does business under two other names, Lake Company and Rain for Rent. (Bastian Decl., Doc. 5 at ¶ 3.) "Rain for Rent is a supplier/retailer of new temporary liquid handling solutions including pumps, tanks, filtration and spill containment." (*Id.* at ¶ 4.) It has various retail locations around the world, including three in Idaho. (*Id.*) Its Idaho locations primarily sell pivot irrigation systems. (*Id.*) Lake Company, on the other hand, creates bales of aluminum scrap at its location in Visalia, California. (*Id.* at ¶ 6.) According to Western Oilfields, those bales are purchased by CASS in Oakland, California and transported to CASS's facility there. (*Id.*) Put differently, Lake Company does not transport the bales to Idaho, and it has no control over what CASS does with the bales once delivered in Oakland. (*Id.* at ¶ 7; Doc. 15-1 at ¶¶ 4, 7.) Moreover, Western Oilfields states that the bales do not include any aluminum pipe for the Idaho Rain for Rent locations. (Doc. 5 at ¶¶ 9–11.)

Floyd, on the other hand, alleges that the bale at issue here was shipped directly from a Rain for Rent facility in Visalia, California to CASS in Hauser, Idaho without

2

passing through the CASS facility in Oakland. (Floyd Decl., Doc. 10 at ¶ 8.)[1]  Floyd alleges that such direct shipments were common. (*Id.* at ¶ 9.)

## ANALYSIS

**I.  Motion to Strike**

In response to Western Oilfields' motion to dismiss, Floyd attached his own declaration that addresses CASS's shipping processes and includes as attachments some scrap metal invoices and other CASS documents. (*See* Docs. 10, 10-1.) Western Oilfields seeks to strike that declaration and its attachments on the grounds that Floyd "failed to offer sufficient testimony to establish the necessary foundation for his speculative and hearsay statements or to authenticate the [attached] documents." (Doc. 16-1 at 2.) Contrary to that characterization, Floyd's declaration explicitly states that he is familiar with CASS's recordkeeping procedures, (Doc. 10 at ¶ 3), he reviewed the business records related to the bale shipped on October 10, 2017, (*id.* at ¶¶ 5–8), and that he has personal experience with shipments from Rain for Rent in California to CASS in Idaho, (*id.* at ¶ 10). This type of knowledge and experience makes him a "qualified witness" under Rule 803(6) of the Federal Rules of Evidence. *See United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990) ("The phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system."). It is not enough that Western Oilfields' own recordkeeper disagrees with Floyd's assertions. The motion to strike (Doc. 16) is denied.

---

[1]  Western Oilfields seeks to strike this declaration, (Doc. 16), which is discussed below.

## II. Motion to Dismiss

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* (internal quotation marks omitted). At this stage, uncontroverted allegations in the complaint are taken as true. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014)). In Idaho, personal jurisdiction is governed by the Idaho long-arm statute, Idaho Code § 5-514, and the Due Process Clause of the Fourteenth Amendment. *Gailey v. Whiting*, 339 P.3d 1131, 1134 (Idaho 2014).

### A. Idaho's Long-Arm Statute

Under Idaho's long-arm statute, an Idaho court has personal jurisdiction over an out-of-state defendant if the defendant is subject to any cause of action arising from (a) the transaction of business within the state or (b) the commission of a tortious act within the state. Idaho Code § 5-514.

#### 1. Transaction of Business

The act of transacting business within Idaho is defined as "the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish,

4

transact or enhance the business purpose or objective or any part thereof of such person, firm, company, association or corporation." *Id.* The mere fact that Western Oilfields has a subsidiary operating in Idaho is not by itself sufficient to confer jurisdiction. Rather, the suit for which jurisdiction is sought must arise out of or relate to the defendant's contact with Idaho.[2] *Telford v. Smith Cty.*, 314 P.3d 179, 183, 185 (Idaho 2013). Western Oilfields maintains that all of its interactions with CASS took place through its other subsidiary, Lake Company, and that all of those interactions occurred in California. (Doc. 5 at ¶¶ 5–7.) But the record at this preliminary stage, when viewed in favor of Floyd, does not support that conclusion. While Western Oilfields may be correct that no shipments were made directly from the Lake Company facility in California to CASS in Idaho, (*see id.* at ¶ 11), the documentation indicates that Rain for Rent was involved with CASS in the buying, selling, and shipping of scrap metal, (*see* Doc. 15-1 at 39), and may have been involved in a direct shipment to CASS's Idaho location, (*see* Doc. 10-1 at 9). At a minimum, a genuine dispute of fact exists whether Western Oilfields was transacting business in the state as contemplated by Idaho's long-arm statute. *See W. States Equip. Co. v. Am. Amex, Inc.*, 868 P.2d 483, 485–86 (Idaho 1994).

    **2.**    **Commission of a Tort**

Floyd's primary argument, however, is that the fact an injury occurred in Idaho is sufficient to invoke jurisdiction under the long-arm statute. While Floyd reads the statute

---

[2] A petition for cert was recently granted regarding this causation question in the Due Process context. *See Ford Motor Co. v. Mont. Eighth Dist. Ct.*, 19-368 (Jan. 17, 2020).

a bit too broadly, the requirements of the long-arm statute are met if the alleged tortious activity was directed at an Idaho resident and the injury was felt within the state. *Blimka v. My Web Wholesaler, LLC*, 152 P.3d 594, 598 (Idaho 2007). Put another way, "[t]he commission of a tort within the state is considered sufficient contact" to invoke personal jurisdiction. *McAnally v. Bonjac, Inc.*, 50 P.3d 983, 986 (Idaho 2002). Here, Floyd has alleged design and manufacturing defect, failure to warn, negligence, breach of warranty, and a *res-ipsa loquitor*/malfunction theory based on the injuries he sustained when the aluminum bale burst in Idaho. (Doc. 1-4.) The Idaho Supreme Court has previously found jurisdiction under the tort provision of Idaho's long-arm statute in a product liability case where the defective component parts of a boiler were manufactured and incorporated into the final product elsewhere before its installation in Idaho. *See Doggett v. Elecs. Corp. of Am., Combustion Control Div.*, 454 P.2d 63, 65−66 (Idaho 1969). As explained therein: "If dangerously defective goods are placed in the intereste [sic] flow of commerce, those whose negligence created the defect should be prepared to defend themselves wherever injury should occur." *Id.* at 68−69. In light of the *Doggett* decision, § 5-514(b) confers jurisdiction.

    **B.**    **Due Process Clause**

But Floyd must also "show that the exercise of personal jurisdiction by an Idaho court would not violate the 'minimum contacts' requirement of the due process clause of the Fourteenth Amendment." *W. States Equip. Co*, 868 P.2d at 486. "The Due Process Clause of the [F]ourteenth [A]mendment ensures the fair and orderly administration of

laws while preventing binding state judgments against defendants with which the forum has 'no contacts, ties or relations.'" *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Contact with a forum state can fall into two categories, "general" jurisdiction and "specific" jurisdiction. *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 924 (2011). "General" jurisdiction exists where a corporation is "fairly regarded as at home" even if the cause of action is unrelated to those activities. *Id.* Because Western Oilfields and its subsidiaries are Delaware corporations with primary places of business in California, (Doc. 5 at ¶ 3), there is no "general" jurisdiction here. The Ninth Circuit uses a three-prong test to determine whether specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice.

*Schwarzenegger*, 374 F.3d at 802. The burden is on the plaintiff to satisfy the first two prongs of the test; failing to satisfy either of these prongs will result in insufficient evidence that personal jurisdiction exists in the forum state. *Id.*

Given the factual disputes about whether either Rain for Rent or Lake Company makes directs shipments to CASS in Idaho, it is difficult to assess the first two prongs of the test. However, construing the facts in favor of Floyd, Western Oilfields, through its

7

other businesses, shipped a defective product to Idaho and that product cause the alleged injuries there. As a result, Floyd has met his burden as to the first two prongs. As for the third prong, given either Western Oilfields' direct activity or its knowing placement of a defective product in interstate commerce, holding it accountable in Idaho would not offend traditional notions of fair play and substantial justice. *See Doggett*, 454 P.2d at 68–69. Western Oilfields' motion to dismiss is therefore denied.

**III. Motion to Stay**

In light of the denial of the motion to dismiss, Floyd's motion to stay is moot.

CONCLUSION

Based on the foregoing, IT IS ORDERED that Western Oilfields' motion to strike (Doc. 16) and motion to dismiss (Doc. 3) are DENIED. Floyd's motion to stay (Doc. 11) is DENIED as MOOT.

IT IS FURTHER ORDERED that:

(1) Western Oilfields shall file its answer on or before **April 28, 2020**.

(2) On or before **May 12, 2020**, lead counsel for the respective parties shall confer to consider the matters listed in Fed. R. Civ. P. 26(f) and Dist. Idaho Loc. Civ. R. 16.1(a). On or before **May 26, 2020**, the parties *must* file a written report outlining the Joint Discovery Plan formulated at the conference as described below. By this same date, the parties *may* also file a Litigation Plan and/or Discovery Plan as described in Dist. Idaho Loc. Civ. R. 16.1(a).

(3) Pursuant to Fed. R. Civ. P. 26(f), the parties should design the Joint Discovery Plan to require simultaneous disclosure of all liability experts. Plaintiff's damages experts shall be disclosed on the same day. Defendant's damages experts shall be disclosed thirty days thereafter. Expert disclosures must comply with Fed. R. Civ. P. 26(a)(2) on or before the deadline for disclosure. Discovery shall close thirty (30) to sixty (60) days after the deadline for disclosure of Defendant's damages experts. The parties should propose a date certain for the close of discovery. Other dates, including a

motions deadline and a trial date, will be set following the Court's review of the parties' Joint Discovery Plan.

The parties should also bear in mind that, as the case develops, they may agree among themselves to extend discovery. Fed. R. Civ. P. 29. However, <u>the discovery deadline set by the Court will not be continued</u>, nor will the Court entertain discovery motions based on post-deadline occurrences.

At the Rule 26(f) conference, the parties should discuss the amount of discovery reasonably needed to resolve the litigation, Fed. R. Civ. P. 26(b)(1), and the preservation of electronically stored information, Fed. R. Civ. P. 37(e); Dist. Idaho Loc. Civ. R. 16.1(b).

(4)  On or before **May 26, 2020**, counsel for the respective parties shall each file a preliminary pretrial statement. *See* Fed. R. Civ. P. 16(c)(2); Fed. R. Civ. P. 26(a)(1). The statement shall address the following:

- (A) a brief factual outline of the case;
- (B) the basis for federal jurisdiction and for venue in the division;
- (C) the factual basis of each claim or defense advanced by the party;
- (D) the legal theory underlying each claim or defense, including, where necessary to a reasonable understanding of the claim or defense, citations to authority;
- (E) a computation of damages;
- (F) the pendency or disposition of any related state or federal litigation;
- (G) proposed additional stipulations of fact not included in the Statement of Stipulated Facts, *see* ¶ 7 below, and the parties' understanding as to what law applies;
- (H) proposed deadlines relating to joinder of parties or amendment of the pleadings;
- (I) identification of controlling issues of law suitable for pretrial disposition
- (J) the name and city and state of current residence of each individual known or believed to have information that may be used in proving or denying any party's claims or defenses, and a summary of that information. If known, the address and telephone number of the individual must be provided to all counsel on request;
- (K) the substance of any insurance agreement that may cover any resulting judgment;

(L) the status of any settlement discussions and prospects for compromise of the case; and
(M) suitability of special procedures.

(5) On or before **May 26, 2020**, Plaintiff shall separately file a Statement of Stipulated Facts to which all parties agree.

(6) Pursuant to Rule 26(d), a party may commence discovery immediately upon providing its Rule 26(a)(1) Initial Disclosure to opposing parties. Early Rule 34 requests are governed by Rule 26(d)(2).

(7) The parties are reminded to review and follow the Federal Rules of Civil Procedure concerning Pleadings, Counterclaims and Crossclaims, and Third-Party Practice.

(8) Documents shall be filed electronically. *See* Dist. Idaho Loc. Civ. R. 5.1. Filings must conform to the "General Format" outlined in Dist. Idaho Loc. Civ. R. 5.2. Self-represented litigants should refer to Dist. Idaho Loc. Civ. R. 5.1(c) and 83.7 for further information about filing requirements.

(9) <u>COUNSEL ARE ADVISED THAT INCOMPLETE OR INADEQUATE INFORMATION ON THE PRELIMINARY PRETRIAL STATEMENT WILL BE DEEMED AN ADMISSION BY COUNSEL THAT THE MATTER IS NON-COMPLEX AND MAY RESULT IN THE CASE BEING SET ON AN EXPEDITED TRIAL DOCKET.</u>

DATED this  7th  day of April, 2020.

15:29 PM

Donald W. Molloy, District Judge
United States District Court